JOHN OHMSGERDS

*v.*

STATE OF ILLINOIS.

*Opinion filed September 11, 1922.*

GOVERNMENTAL FUNCTION—*when State not liable.* The State in conducting the Illinois State Penitentiary at Joliet exercises a governmental function and is not liable for injuries sustained by its employees while in the performance of their duty.

SOCIAL JUSTICE AND EQUITY—*recommendation.* Where an employee is injured while in the performance of his duty, the Court as a matter of social justice and equity may recommend to the Legislature an appropriation for his benefit.

Edward J. Brundage, Attorney General, for State.

This is a suit for damages resulting from injuries incurred by claimant from an attack upon him by three convicts while in the lawful discharge of his usual and assigned duties as guard in the Illinois State penitentiary at Joliet, Illinois, one of the institutions of the State of Illinois.

The claimant was in the employ of the State as a guard at the above named penitentiary on a salary of $125.00 per month, and on the 4th day of September, while so employed as a guard, and in the performance of his usual duties, while in the gallery at No. 6 in the west wing of the said penitentiary, three convicts, who had secretly made keys to open their cell doors in said gallery, where they were stationed, opened the doors of their cells and suddenly without warning rushed upon claimant, two approaching him from behind, and one in front of him, and assaulted him with great violence, trying to force him into one of the cells. At that moment, one of the prisoners was heard to exclaim *"God damn, let's get him now,"* when one of them drew from his clothing, a long pair of shears and endeavored to stab claimant. There being no other way or means of escape, claimant jumped off the gallery, alighting on the first landing, which was three floors below, thereby causing fractures and infraction of both feet, breaking the ankles and causing deformities of the feet, causing permanent injuries to the feet of claimant, so that he is now able to move about only by use of a cane. Claimant is a married man, having a wife and one daughter dependent upon him for support.

This evidence is substantiated by a number of other witnesses and no evidence by the State is given to contradict it.

Dr. Alfred M. Houston, a witness, testified in part, that he made an X-ray examination of both feet and ankles of claimant (which are on file in this cause, and constitutes part of the evidence herein), and

found that there was a dorsal dislocation of the proximal end of the first metatarsal on the right foot and evidence of a previous fracture involving the posterior end of the oscalcis of the left foot.

That the conditions found in both feet are causing deformities that will not adjust themselves and which cause difficulty in walking and produce loss of normal function. Dr. Fletcher, the prison physician attended from the time of the injury to December 2, 1921, and as a witness states that his examination "disclosed that there were fractures and infractions to both feet, broken arches, torn ligaments and crushed bones, and that claimant cannot walk as well as before the injury; that there is a deformity to the instep of the right foot and that it is with difficulty, and only by use of a cane, that claimant walks." David Murray also testifies that claimant "walks with a cane." Claimant was in the hospital five weeks, and on being released returned to his work as guard, at same rate of pay as before injury he received. During the entire time he was so incapacitated, he received his regular monthly wages of $125.00 per month. There being nothing in the record to contradict it, is presumed that claimant's medical, surgical and hospital services were furnished him gratis by the State.

In his brief and argument, claimant claims compensation for total incapacity for right foot and 25% partial incapacity of left foot.

The evidences discloses that so far, the claimant lost no money or wages on account of his injuries, nor has he incurred any medical expense, no hospital nor nurse bills, all having been paid for by the State. The claim then, if any, goes only to the permanent disability, and not to the total temporary disability or medical expense.

We cannot concede that the evidence shows a total loss of the use of the right foot, nor 25% loss of use of the left foot. Claimant's own evidence shows that claimant after being discharged, returned to his usual employment, as a guard, on same salary as was received before injury received, and that he walked, but with difficulty and with a cane.

Our ideas are that to be an efficient guard and able to discharge the usual duties incumbent upon him, requires a person of reasonably fair action of the feet, and limbs at least. A person of total loss of use of one foot and 25% loss of the use of the other, would scarcely be put on so important duty as an able bodied guard at full pay.

As long as his present connection with the State continues (receiving his usual salary) his earnings have not been affected by the injury. There is no evidence (except what may reasonably be deduced from the evidence as to the extent of the injury) of the loss of earning capacity in case he leaves his present employment. There is nothing in the declaration to indicate that he is a married man, has a wife or child. The evidence (claimant's affidavit, which is by stipulation admitted as evidence) discloses that claimant has wife and one child (Esther), but does not state age of child, or that it is dependent upon him for its support.

This Court has uniformly held in all cases of the character of at bar, that the doctrine of *respondeat superior* is not applicable to the State. It follows therefore that as a matter of law, the demurrer should

be sustained and claim dismissed, but we view this case as being one where claimant was badly crippled without fault on his part, while in the lawful discharge of his duties as an employee of the State, which at least entitles claimant to equitable relief.

Therefore from an equitable view point and in the interest of social welfare, we recommend to the Legislature that it make an appropriation for claimant in the sum of fifteen hundred dollars.